**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
PARIS WINDSOR,

                Plaintiff,                  **COMPLAINT**

   -against-

                                     **Jury Trial Demanded**

STEFANOS KOTANIDIS, VASILIKI
KOTANIDIS and NICK KOTANIDIS,

                Defendants.
-----------------------------------------------------------X

       Plaintiff Paris Windsor ("Windsor" or "Plaintiff") alleges against Stefanos Kotanidis ("Stefanos"), Vasiliki Kotanidis ("Vasiliki") and Nick Kotanidis ("Nick") (collectively, "Defendants"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Windsor was employed by the Defendants from approximately January 8, 2020 to June 14, 2020 as a caretaker and also performed general household work, including cleaning.

2. From approximately January 8, 2020 to February 25, 2020, Windsor typically worked from 10:30 a.m. to 10:30 p.m. seven days per week, for a total of 84 hours per week. From approximately February 26, 2020 through April 30, 2020, Windsor worked 24 hours per day, seven days per week, for a total of 168 hours per week.

3. From approximately May 1, 2020 to June 14, 2020, Windsor worked 15 hours per day, seven days per week, for a total of 105 hours per week.

4. Despite promising to pay Windsor $30.00 per hour, the Defendants failed to pay Windsor during her employment. Windsor was not paid minimum wage or overtime.

5. In addition, the Defendants failed to provide Windsor with a wage notice either upon her

hire or annually. The Defendants also failed to provide Windsor with a proper wage statements.

6. As such, Plaintiff alleges pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA") that she is entitled to recover from Defendants: (1) unpaid minimum wage, (2) unpaid overtime, (3) liquidated damages and (4) attorneys' fees and costs.

7. Plaintiff further alleges pursuant to the New York Labor Law ("NYLL") that she is entitled to recover from Defendants: (1) unpaid minimum wage, (2) unpaid overtime, (3) civil damages for the failure to provide a wage notice, (4) civil damages for the failure to provide proper wage statements, (5) lost wages for retaliation, (6) liquidated damages and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this district, Defendants' reside in this district and Plaintiff worked for Defendants' in this district.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11. Plaintiff Paris Windsor ("Windsor" or "Plaintiff") was and is a resident of Queens County, New York.

12. Defendant Stefanos Kotanidis ("Stefanos") was and is a resident of Queens County, New York.

13. Stefanos has a place of residence located at 21-02 23rd Street, Astoria NY 11105.

14. Defendant Vasiliki Kotanidis ("Vasiliki") was and is a resident of Queens County, New York.

15. Vasiliki has a place of residence located at 21-02 23rd Street, Astoria NY 11105.

16. Defendant Nick Kotanidis ("Nick") was and is a resident of Queens County, New York.

17. Nick has a place of residence located at 21-02 23rd Street, Astoria NY 11105.

18. Stefanos exercised control over the employment terms and conditions of Windsor. Stefanos had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Windsor. At all times, Windsor could complain to Stefanos directly regarding any of the terms of her employment, and Stefanos would have the authority to effect any changes to the quality and terms of Windsor's employment.

19. Vasiliki exercised control over the employment terms and conditions of Windsor. Vasiliki had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Windsor. At all times, Windsor could complain to Vasiliki directly regarding any of the terms of her employment, and Vasiliki would have the authority to effect any changes to the quality and terms of Windsor's employment.

20. Nick exercised control over the employment terms and conditions of Windsor. Nick had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of

employment of Windsor. At all times, Windsor could complain to Nick directly regarding any of the terms of her employment, and Nick would have the authority to effect any changes to the quality and terms of Windsor's employment.

21. The acts of the Defendants alleged in this Complaint were authorized, directed or accomplished by Stefanos, Vasiliki and Nick, jointly and severally.

## STATEMENT OF FACTS

22. From approximately January 8, 2020 to June 14, 2020, Windsor was employed by the Defendants.

23. In December 2019, Stefanos broke his hip which required surgery.

24. Stefanos was a patient at Mount Sinai Queens, located at 25-10 30th Avenue, Queens NY 11102.

25. At Mount Sinai, Nick saw Windsor and said, I need someone to take care of my parents. I would rather have you than a stranger. I'm going to take care of you.

26. Windsor responded, You'll let me know when you need me.

27. In approximately early January 2020, Stefanos was transferred to New York Center for Rehab and Nursing ("nursing home"), located at 26-13 21st Street, Astoria NY 11102.

28. Nick told Windsor, Come tomorrow. Come every day. Take care of my parents. And I take care of you (Windsor).

29. Around January 8, 2020, Windsor commenced employment with the Defendants.

30. From approximately January 8, 2020 to February 25, 2020, worked from approximately 10:30 a.m. to 10:30 p.m. (12 hours per day), seven days per week (84 total hours per week).

31. During this time, at Stefanos's request, Windsor would visit Stefanos twice daily at the

nursing home. During the nursing home visit, Windsor would feed Stefanos and make sure he received his medication. Before and between the visits, Windsor would go to Defendants' house located at 21-02 23rd Street, Astoria NY 11105 to clean.

32. On or about the third day working for Defendants, Nick told Windsor, Let's sit down and talk business. How much for my dad? Windsor said, I know outside people are getting between $18.00 and $22.00 per hour. Nick then asked how much for both of my parents because I need somebody to look after my mother. Windsor said $30.00 per hour for both of them would be a fair price. Nick agreed to pay Windsor $30.00 per hour. Nick said he would take care of Windsor.

33. Nick told Windsor that he needed someone to stay in the house with his parents, to care for them and to clean the house.

34. Later that same day at the nursing home, Nick told Stefanos that Windsor was going to move into the house and to take care of both Stefanos and Vasiliki. Stefanos was in agreement with the arrangement and understood that Windsor was to be paid $30.00 per hour.

35. About one week later (approximately mid-January 2020), Windsor was not paid and complained directly to Stefanos. Stefanos said, Honey I asked my sons to bring me money. Nobody brought me the money. Don't worry I have so much money in the bank. Once I get home, I will take care of you. I appreciate everything you do for me and my wife.

36. On or about February 8, 2020, Windsor moved into Defendants' house located at 21-02 23rd Street, Astoria NY 11105.

37. On or about February 26, 2020, Stefanos returned home from the nursing home.

38. From approximately February 26, 2020 to April 30, 2020, Windsor worked for Defendants, 24 hours per day, seven days per week, for a total of 168 hours per week.

39. From approximately May 1, 2020 to June 14, 2020, Windsor worked for Defendants, 15 hours per day, seven days per week, for a total of 105 hours per week.

40. During this time, Windsor would care for Stefanos by providing him with medication and exercise him. Windsor also cared for Vasiliki. Further, Windsor cleaned, cooked, did laundry and went food shopping for the Defendants.

41. While employed by the Defendants, Windsor provided services including, but not limited to: personal care services, such as assistance with walking, bathing, dressing, personal grooming, meal preparation, feeding and toileting, heavy and light cleaning, such as brooming, mopping, dusting, organizing, cleaning windows, cleaning bathrooms, doing laundry, cooking, and taking out garbage; shopping, running errands, and taking care of the household.

42. While employed by the Defendants, Windsor regularly spent more than 20% of her time in a workweek performing general household work. This included, as described above, heavy cleaning tasks such as brooming, mopping, dusting, cleaning windows, cleaning bathrooms, cooking, and taking out the garbage. As such, Windsor was not exempt from coverage under the "companionship" exemptions to the FLSA and NYLL.

43. At all times herein relevant, Defendants had the right to control, and in fact did control, the hours, hourly pay, assignments and schedule of Windsor.

44. In mid-May 2020, Windsor complained to both Stefanos and Nick that she needed to get paid. Windsor said that the pandemic is getting better and banks are re-opening.

45. Stefanos would say, My son Alex has to come get me. Honey, I have to go to the bank.

46. Despite Stefanos's promises to pay Windsor, Windsor was never paid.

47. Around the third week of May 2020, Nick had a conversation with his parents and Stefanos wants to give you $100.00 per week.  Windsor started to pack the next morning and attempted to leave.  Nick heard Windsor leaving and refused to allow her to leave.  Nick also promised to speak with his parents about paying Windsor, specifically saying, They're gonna pay you.  They have to pay you.

48. Later on that same day, Vasiliki asked Windsor, Why are you upset?  Where are you going to go?  Windsor says, I am not getting paid.  Vasiliki says, He's (Stefanos) is going to pay you.

49. Nonetheless, Windsor was never paid.

50. On or about June 14, 2020, Windsor told both Stefanos and Nick that she was forced to resign because she was not paid.

51. Windsor was constructively terminated because of the Defendants' failure to pay her any wages.

52. During Windsor's employment with the Defendants, Windsor was not paid.

53. During Windsor's employment with the Defendants, Windsor was not paid minimum wage.

54. During Windsor's employment with the Defendants, Windsor was not paid at the agreed-upon $30.00 per hour.

55. During Windsor's employment with the Defendants, Windsor worked in excess of forty hours per week.

56. Despite working in excess of forty hours per week, Defendants failed to pay Windsor at the required overtime rate.

57. The Defendants did not provide a wage notice to Windsor upon her hire; or annually.

58. The Defendants did not provide Windsor with a proper wage statement with each payment she was supposed to receive.

59. Defendants knowingly and willfully failed to pay minimum wage or overtime.

**FIRST CAUSE OF ACTION**
**FLSA – MINIMUM WAGE**

60. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

61. By failing to pay the federal minimum wage, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*

62. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

63. Defendants' failure to pay minimum wage caused Plaintiff to suffer loss of wages and interest thereon. Plaintiff is entitled to recover from Defendants her unpaid minimum wage, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NYLL – MINIMUM WAGE**

64. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

65. By failing to pay the New York state minimum wage, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*

66. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the

meaning of 29 U.S.C. § 255(a).

67. Defendants' failure to pay minimum wage caused Plaintiff to suffer loss of wages and interest thereon. Plaintiff is entitled to recover from Defendants her unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**FLSA – UNPAID OVERTIME**

68. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

69. By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

70. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

71. Defendants' failure to pay overtime caused Plaintiff to suffer loss of wages and interest thereon. Plaintiff is entitled to recover from Defendants her unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**FOURTH CAUSE OF ACTION**
**NYLL – UNPAID OVERTIME**

72. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs

hereof with the same force and effect as though fully set forth herein.

73. Defendants have willfully failed to supply the Plaintiff with a wage notice as required by NYLL, Article 6, § 195(1), at the time of hiring or annually, containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission other; the regular pay day designated by the employer; the name of the employer; the physical address of the employer and the telephone number of the employer.

74. Due to the Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants fifty dollars for each workday that the violations occurred or continue to occur, up to a maximum of $5,000.00 per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## FIFTH CAUSE OF ACTION
## NYLL – FAILURE TO PROVIDE WAGE NOTICE

75. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

76. Defendants have willfully failed to supply the Plaintiff with a wage notice as required by NYLL, Article 6, § 195(1), at the time of hiring or annually, containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission other; the regular pay day designated by the employer; the name of the employer; the physical address of the employer and the telephone number of the employer.

77. Due to the Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants fifty dollars for each workday that the violations occurred or continue to

occur, up to a maximum of $5,000.00 per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## NYLL – FAILURE TO PROVIDE WAGE STATEMENT

78. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79. Defendants have willfully failed to supply the Plaintiff with a wage statement as required by NYLL, Article 6, § 195, with each payment received, that properly notifies Plaintiff of he hourly pay rate and overtime rate.

80. Due to the Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants fifty dollars for each workday that the violations occurred or continue to occur, up to a maximum of $5,000.00 per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NYLL – RETALIATION

81. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect though fully set forth herein.

82. Windsor was employee of the Defendants within the meaning of NYLL § 215.

83. Defendants are employers within the meaning of NYLL § 215.

84. While employed by the Defendants, Windsor verbally complained to the Defendants about Defendants' practice, policy and procedure of not paying minimum wage and overtime.

85. Windsor's verbal complaints to Defendants constitute protected activity under the NYLL.

86. Upon complaining to the Defendants about their unlawful employment practices, Defendants retaliated against Windsor by constructively terminating her employment.

87. A causal connection exists between Windsor's complaints to Defendants and Windsor's constructive termination.

88. Defendants violated NYLL § 215 by retaliating against Windsor for complaining to Defendants about their unlawful employment practices, policies and procedures that violate the NYLL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

b.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of compensatory damages as a result of Defendants' failure to pay minimum wage pursuant to the FLSA, NYLL and supporting regulations;

d.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA, NYLL and supporting regulations;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage and overtime compensation pursuant to the FLSA and NYLL;

f.  An award of statutory civil damages as a result of Defendants' failure to provide a wage notice;

g.  An award of statutory civil damages as a result of Defendants' failure to provide wage statements;

h.  An award of lost wages as a result of Defendants' retaliation;

i.  An award of prejudgment and post-judgment interest;

j.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

k.  Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated: August 14, 2020
       New York, New York

Respectfully submitted,

**Akin Law Group PLLC**

*/s/ Robert D. Salaman*
_____
Robert D. Salaman
Zafer A. Akin
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
rob@akinlaws.com
zafer@akinlaws.com

*Counsel for Plaintiff*